IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TROY McGARVEY,<br><br>Petitioner,<br><br>vs.<br><br>VANCE LAUGHLIN; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | CV 14–201–M–DLC–JCL<br><br>ORDER |

United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendations in this case on December 21, 2016, recommending that Petitioner Troy McGarvey's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 be dismissed. (Doc. 20.) McGarvey timely objected to the Findings and Recommendations. (Doc. 21.) The government then responded to McGarvey's objections. (Doc. 22.)

The facts, which Judge Lynch described in full, are incorporated throughout this Order as necessary. Following a three-day trial in November 2013, McGarvey was convicted on two counts of deliberate homicide for the murders of Clifford Grant and Norman Nelson. Before, during, and after the state court proceedings,

1

McGarvey has consistently maintained his innocence. He appealed his initial conviction to the Montana Supreme Court, which affirmed the trial court. Later, his appeal for post-conviction relief through the state court system was denied.

In his petition for writ of habeas corpus, brought under 28 U.S.C. § 2254, McGarvey argues that he is entitled to a new trial under three theories: (1) *Brady*; (2) ineffective assistance of counsel; and (3) cumulative error. The magistrate judge considered McGarvey's arguments, and he recommends that the Court dismiss the petition. McGarvey objects, claiming that the magistrate judge erred in analyzing each of his claims for relief. The Court dismisses McGarvey's petition, adopting the Findings and Recommendations in full.

## DISCUSSION

### I. *Brady* Violations

McGarvey argues that the State failed to disclose critical evidence and that the Montana Supreme Court erred in analyzing his claims under *Brady*. Judge Lynch agreed—and the State conceded—that the Montana Supreme Court failed to apply the correct *Brady* standard, but he nonetheless determined that the no *Brady* violation occurred. McGarvey now argues that the magistrate judge erred by finding that he has no *Brady* claim arising from the State's failure to disclose four pieces of evidence: (1) the jail notes of Robert Armstrong, one of two key

2

witnesses[1]; (2) a drug connection between the other key witness, Stan Edwardson, and another individual, Rod Monroe; (3) information regarding Tony Sanchez, who McGarvey suggests was the true perpetrator; and (4) a letter written by Armstrong's mother questioning Armstrong's mental state. The Court discusses each alleged error in turn, ultimately agreeing with the magistrate judge that McGarvey did not suffer prejudice as a result of the State's failure to disclose exculpatory material.

### A.     Robert Armstrong's Jail Notes

While in jail, Armstrong made notes which call into question his mental and emotional stability. He wrote:

> Nervous tension, stress, crippling anxiety, inability to concentrate, unable to enjoy relaxed though or anything for that matter. Good meds. Possibly skip alcohol treatment center. Noises in head sound like the pressurized sound you get when you dive deep in water. Afraid of God listening to conscience. Got over paranoia. Now occasionally get discouraged when I can't think clearly because of agitation to the motherfuckers trying to hear my conscious. New form of defense and inevitable discovery, step toward the future. Identifying mood signals or sound waves associated with conversation and identifying thought based conversation and the signals the mind is giving off and must be very patient schizo.

During discovery, the State informed McGarvey that it had these notes in its

---

[1] As Judge Lynch discussed in his Findings and Recommendations, the State's case against McGarvey was based primarily on the testimony of Armstrong and Edwardson, both of whom testified that they had heard McGarvey confess to the murders.

3

possession but that Armstrong's handwritten notes "are voluminous and serve no evidentiary value nor are they exculpatory in nature." It also stated that it had consulted with McGarvey's trial counsel and that the parties had agreed that the notes would be available to the defense during trial. It is unclear whether McGarvey's trial counsel reviewed the notes at any time, but the State offered them to the defense for review at trial.

The Montana Supreme Court concluded that the State did not suppress Armstrong's jail notes, and Judge Lynch determined that the decision was neither an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented. The Court agrees. The State's characterization of the notes was not unfair, and the State did not fail to disclose the existence or nature of the notes to the defense.

### B. Edwardson's Connection to Monroe

Edwardson initially denied knowing anything about the murders, but—after conversations with his sister and with Monroe—he told law enforcement that he heard McGarvey confess to the crime. In the months following Edwardson's statement implicating McGarvey, Edwardson and Monroe manufactured methamphetamine together, and the State charged both of them for their participation in the operation. The State did not disclose the drug connection

4

between Edwardson and Monroe.

During the state post-conviction hearing, the trial court determined that this information was irrelevant because Edwardson and Monroe did not produce methamphetamine together until after Edwardson informed law enforcement about McGarvey's confession. The Montana Supreme Court agreed, and Judge Lynch found no error, applying the deference required under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court finds McGarvey's objections unpersuasive because McGarvey has presented no evidence demonstrating that Monroe and Edwardson had even discussed a plan to manufacture before Edwardson came forward with his story. McGarvey's argument is merely speculative, and it is insufficient to defeat the deference this Court must apply in reviewing the State court decision.

C.   **Lake County Information**

The murder occurred in Flathead County, and Flathead County personnel investigated and prosecuted the crime. Law enforcement officers in neighboring Lake County interviewed a woman, Mary Leiptich, who had a "gut instinct" that another individual, Tony Sanchez, had killed Grant and Nelson. Leiptich gave some more specific information about Sanchez, too, including his involvement in dealing drugs, his propensity for violence when a debt was owed to him, and her

5

fear of him. Lake County officers also interviewed the mother of Sanchez's children, who told them that Sanchez had threatened to kill her and intimated that Sanchez may have put another individual in the hospital for that individual's failure to pay a debt. Nothing in the record indicates that Flathead County personnel were aware of this evidence, but the two counties did coordinate on the case to some degree.

The Montana Supreme Court determined that Flathead County personnel did not fail to disclose any evidence because it did not have this evidence within its control. It also noted that—even if the evidence had been suppressed—McGarvey suffered no prejudice because the evidence was too vague to be valuable. Judge Lynch found that the Montana Supreme Court's opinion was not contrary to and did not involve an unreasonable application of clearly established federal law. The Court agrees.

Neither party is able to definitively support its position regarding Flathead County's obligation to procure information in the possession of a different county. Under *Kyles v. Whitley*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. 419, 437. The Ninth Circuit has gone a step further, holding that a federal prosecutor has "possession and control" over

information held by other federal agencies, even when the agency did not participate in the investigation. *United States v. Santiago*, 46 F.3d 885, 894. On the other hand, a federal prosecutor does not have the same control over information held by state agencies. *Id.* However, the Ninth Circuit has not addressed whether a state prosecutor has possession and control over information held by investigators in another county.

Resolution of this issue hinges on the deferential standard that this Court must apply under AEDPA. Federal law, as determined by the United States Supreme Court, does not clearly establish that a state prosecutor in one county has a duty to discover and disclose evidence held by investigators in another county, and so the Montana Supreme Court cannot be found to have erred in its analysis. Moreover, much—though not all—of the information was vague and/or unlikely to be admissible.

### D.   Susan Fox's Letter

Armstrong's mother, Susan Fox, wrote a letter regarding Armstrong's mental state and sent a copy to the prosecutor who worked on both Armstrong's and McGarvey's cases. Fox wrote that Armstrong showed signs of damage caused by electroshock treatment, particularly forgetfulness and inability to handle stress. She also testified at Armstrong's sentencing, consistent with her letter. Neither

7

the letter nor the transcript were disclosed to McGarvey.

The Montana Supreme Court determined that no *Brady* violation occurred because McGarvey's trial counsel could have found this information on its own. Judge Lynch found error in that Court's standard, as *Brady* does not require a defendant to exercise diligence in finding exculpatory evidence available to the prosecutor. However, Judge Lynch determined that the error was inconsequential because no prejudice occurred when the letter would have been unlikely to affect the resolution of the trial. McGarvey's trial counsel painted Armstrong as a liar, thief, extortionist, and drunk; they thoroughly impeached Armstrong's credibility, but the jury believed him nonetheless. Although this evidence was suppressed, the Court agrees with Judge Lynch that it is unlikely that disclosure would have affected the trial in such a way as to create a reasonable probability of a different result at trial. *See United States v. Bagley*, 473 U.S. 667, 682 (1985).

## II. Ineffective Assistance of Counsel

McGarvey next argues that he received ineffective assistance of counsel at trial. Judge Lynch determined that the Montana Supreme Court did not err in its dismissal of McGarvey's claims. McGarvey now argues that the magistrate judge erred by finding that he has no habeas claim arising from his trial counsel's deficiencies in two areas: (1) their impeachment of Armstrong and Edwardson;

8

and (2) their failure to hire a forensic expert. The Court discusses both alleged errors, ultimately agreeing with the magistrate judge that McGarvey has not demonstrated that the State Court's adjudication of his claims was erroneous.

## A. Impeachment of Armstrong and Edwardson

Neither Armstrong nor Edwardson was an ideal witness. As McGarvey has argued at each step following trial, each witness failed to come forward with his story initially, and it would have been reasonable for the jury to discredit the testimony of each. McGarvey points out that Armstrong gave seven different versions of McGarvey's confession, and each time he told the story, he claimed that a different group of people had been present to hear McGarvey describe the murders. Similarly, McGarvey points to Edwardson's various stories, most notably that told during his first interview with law enforcement, at which time he claimed to have heard no confession at all. Edwardson's recollection was refreshed only after talking to his sister—who, he claims, told him to do the right thing—and Monroe—who, he admits, asked him to tell the police that Monroe had been present for McGarvey's confession. McGarvey argues that his trial counsel were ineffective in failing to draw out these inconsistencies during cross-examination.

The Montana Supreme Court determined that trial counsel's cross

9

examination of these two witnesses was attributable to reasonable trial strategy rather than incompetence. Judge Lynch, applying the deferential standard required under AEDPA, found no error. As the Montana Supreme Court determined, trial counsel could reasonably have chosen to avoid the risks of in-depth cross-examination, including repetition of inculpatory and consistent details in Armstrong's testimony and exposure to McGarvey's wife by Edwardson. The Court agrees with Judge Lynch, determining that McGarvey has not shown that "there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

## B. Failure to Hire a Forensic Expert

At trial, McGarvey's counsel did not call an expert witness to testify about the forensic evidence. During the post-conviction state proceeding, McGarvey introduced the evidence of a forensic expert who suggested that Grant's face, which was badly mangled, was cut off with a knife and not, as the State's expert claimed, ravaged by one or more of the many pit bulls living on Grant's property. McGarvey's expert also testified that Grant and Nelson had likely been shot from different locations, implying that two shooters were present on the scene. If this testimony had been offered at trial and believed by the jury, it would have refuted the State's theory regarding how the murders occurred.

10

The Montana Supreme Court held that McGarvey's trial counsel acted reasonably in determining that they could present the necessary evidence by cross-examining the State's expert rather than hiring their own. The Court found that, through cross, McGarvey showed that two shooters could have been on the scene and effectively highlighted the ambiguity in the testimony of the state's expert. It also determined that the defense expert's testimony regarding cuts to Grant's face was not credible, as the state trial court found during the post-conviction hearing.

Judge Lynch recommends that the Court dismiss this claim, finding that, even if a defense expert could have conceivably made the defense's position stronger, the Montana Supreme Court did not unreasonably determine that trial counsel reasonably chose to present their theory through cross rather than direct examination. Federal law does not clearly require that trial counsel present expert testimony whenever the state puts an expert on the stand; in fact, the Supreme Court has refuted that very argument. *Harrington v. Richter*, 562 U.S. 86, 106–111 (2011). The Montana Supreme Court was not unreasonable in denying McGarvey's claim based on this theory.

### III. Cumulative Error

Finally, McGarvey argues that, even if no individual error mandates that the Court to grant his claim for habeas relief, together, the Montana Supreme Court's

11

errors require reversal of his conviction. However, here no constitutional error occurred, and reversal is unwarranted.

## IV. Certificate of Appealability

McGarvey has not "made substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. Although the Montana Supreme Court applied the wrong *Brady* analysis when it considered the letter written by Armstrong's mother regarding Armstrong's mental state, there was ultimately no constitutional error. Additionally, while it is not clearly established whether the Flathead County prosecutor had any duty to discover information held by Lake County law enforcement, under AEDPA, the lack of clearly established federal law requires deference to the State Court's post-conviction opinion. Here, there are neither close questions nor reason to encourage further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is unwarranted.

Accordingly, IT IS ORDERED:

(1) The Findings and Recommendations (Doc. 20) is ADOPTED in full.

(2) McGarvey's Petition (Doc. 1) is DENIED for lack of merit.

(3) A certificate of appealability is DENIED.

Dated this 22nd day of March, 2017.

*(signature)*
Dana L. Christensen, Chief Judge
United States District Court